# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SHAUN D. STROBEL, )
)
          Plaintiff, )
)
v. )    Case No. CIV-10-516-CH
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shaun D. Strobel, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. Based on the Court's review of the record and issues presented, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this Memorandum Opinion and Order.

## I.    Procedural Background

Plaintiff filed his application for SSI on October 17, 2006, alleging a disability onset date of May 22, 1985, the Plaintiff's birth date. He later amended the onset date to October 17, 2006, the date Plaintiff filed his application.[1] *See* Administrative Record [Doc. #15] (AR) at 111-116; *see also* AR 26. The Social Security Administration denied his application

---

[1] Plaintiff's mother provided testimony at the administrative hearing that Plaintiff received SSI benefits for a period during his childhood but that the benefits ceased at some point. AR 54-57.

initially and on reconsideration. AR 74-75. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR at 8-17. The Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

## II.     **The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 10. At step two, the ALJ determined that Plaintiff has the following severe impairments: learning disorder, seizure disorder and obesity. AR 10. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 11.

> The ALJ next determined Plaintiff's residual functional capacity (RFC):
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid all exposure to hazards such as moving machinery and unprotected heights. As to basic mental work activities, the claimant can perform simple and some complex tasks; can relate on a superficial basis and his adaptive functions are intact.

AR 13. At step four, the ALJ concluded that Plaintiff has no past relevant work. AR 15. At step five, relying on the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 15-16. Representative jobs include cleaner, packing line worker, assembly small products, hand

2

packer, kitchen helper and cleaning jobs. AR 16. The ALJ concluded, therefore, that Plaintiff is not disabled.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Claims Raised on Appeal

Plaintiff raises three claims on appeal: (1) the ALJ erred as a matter of law in failing to properly evaluate all medical opinions of state agency psychologist Dr. Kampschaefer; (2)

the ALJ's RFC determination is not supported by substantial evidence; and (3) the ALJ erred as a matter of law in failing to properly develop the record by ordering EEG testing.

V.     **Analysis**

   A.     **Claim One: Alleged Inconsistencies in Opinion of Consultative Examiner Cynthia Kampschaefer**

As her first claim of error, Plaintiff contends the ALJ failed to address inconsistencies in the opinion of the consultative examiner, Dr. Cynthia Kampschaefer. Specifically, Plaintiff contends Dr. Kampschaefer's findings in the Mental RFC form conflict with her narrative statement. Plaintiff claims the ALJ should have addressed all moderate limitations set forth in Dr. Kampschaefer's RFC form but erred by only adopting certain findings in the narrative statement. The Commissioner responds that no conflict exists between the narrative opinion and the findings set forth in the RFC form and, therefore, Plaintiff's claim is meritless.

Dr. Kampschaefer completed a Mental RFC form on February 8, 2007. AR 233-235. As pertinent to Plaintiff's claim, she found Plaintiff moderately limited in the following areas: (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions; and (3) the ability to maintain attention and concentration for extended periods. AR 233. In the narrative section of the Mental RFC form, Dr. Kampschaefer stated: "He can do simple and some complex tasks." AR 235. The ALJ adopted Dr. Kampschaefer's narrative conclusions in formulating Plaintiff's RFC. *See* AR

13 ("As to basic mental work activities, the claimant can perform simple and some complex tasks . . . .").

When the ALJ questioned the VE, he included only the following mental limitations: "Let's assume that the hypothetical person is able to do simple and some complex tasks." AR 64. The ALJ's hypothetical incorporates the moderate limitations found by Dr. Kampschaefer regarding Plaintiff's ability to "understand and remember detailed instructions" and "carry out detailed instructions." AR 233; *compare Moore v. Astrue*, No. 10-1242-SAC, 2011 WL 1885940 at * 4 (D. Kan. May 18, 2011) (unpublished op.) (ALJ's RFC finding that claimant was limited to work "of simple to intermediate complexity" incorporated doctor's opinion that claimant was moderately limited in ability to understand, remember and carry out detailed instructions). But the ALJ did not include in the hypothetical questions to the VE any moderate limitation regarding Plaintiff's "ability to maintain attention and concentration for extended periods." *Compare Wiederholt v. Barnhart*, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005) (unpublished op.) (hypothetical question was flawed, requiring remand, where ALJ only included the limitation of "simple, unskilled tasks mentally" but did not include restriction for moderate limitations maintaining concentration, persistence or pace); *Moore v. Astrue*, *supra*, 2011 WL 1885940 at * 4 (ALJ erred by failing to include in his RFC the doctor's opinion that plaintiff was moderately limited in ability to maintain attention and concentration for extended periods, requiring a remand). Nor did the ALJ discuss in his opinion any reasons for rejecting Dr. Kampschaefer's moderate limitation regarding Plaintiff's ability to maintain attention and

5

concentration for extended periods. Moreover, nothing in the record is inconsistent with Dr. Kampschaefer's finding. Under these circumstances, the ALJ erred in not incorporating the moderate limitation in the questions to the VE and in failing to address the moderate limitation in his decision. *See, e.g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (remanding on grounds ALJ failed to address why he rejected some moderate limitations on doctor's RFC assessment, while accepting others, where ALJ did not state that any evidence conflicted with the doctor's opinion regarding those moderate limitations); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184 at * 5 ("[t]he RFC assessment must be based on all of the relevant evidence in the case record). A remand, therefore, is required.

### B. Claims Two and Three: The ALJ's RFC Determination As Related to Plaintiff's Seizure Disorder

Plaintiff's remaining two claims challenge the ALJ's RFC determination on grounds the ALJ included no provision for unscheduled breaks from work activity due to Plaintiff's seizure disorder. In his second claim, Plaintiff contends the ALJ's RFC is not supported by substantial evidence, a factual error. In his third claim, Plaintiff contends legal error in the RFC, based on the ALJ's alleged failure to develop the record by ordering EEG testing.

The medical record undisputably establishes Plaintiff suffers from seizure disorder and that he has had this disorder from early childhood. What remains unclear from the record, however, is the cause of Plaintiff's seizure disorder. As Plaintiff points out, at least two examining physicians felt further testing, and specifically EEG testing, was necessary for such analysis. AR 240 (Dr. Lawton); AR 259 (Dr. Warner).

6

Plaintiff's subjective statements to doctors along with other lay witness statements establish Plaintiff's seizures are frequent, and can include from 5 or 6 up to 13 per month. *See, e.g.,* AR 156, 160, 210, 239, 252. In addition, the medical opinions of examining physicians show Plaintiff's testimony regarding the frequency of his seizures is entirely credible given the severity of his disorder. *See, e.g.,* AR 240.

With respect to Plaintiff's seizure disorder, the ALJ posed the following hypothetical questions to the VE:

> Q. . . . [T]he individual at times that cannot be known that [sic] spontaneously will go into a seizure. He could be right there at the workstation and might have a seizure and it might last as much as five or ten minutes and he might even have more than one of those a day that would take place at unknown times. Maybe it would be during a break but hey maybe it'd be in the middle of when your supposed to be working.
>
> A. Yes.
>
> * * *
>
> Q. Okay, would the claimant be able to do any of the jobs that you've described so far?
>
> A. Your Honor, could I clarify after the seizure what happens?
>
> Q. There'd be a period of say 30 minutes before the individual could return working.
>
> A. Your Honor, it's been my experience that would require an accommodation from the employer. The irregular times of the seizures and as you say it could happen anytime during the workday the work still has to be done.
>
> Q. So, if you're talking entry-level work, unskilled work, they aren't going to, that's, that is not ordinarily allowed in an unskilled, entry-level job

> that would be expected to be done eight hours a day, five days a week on an ongoing basis or an equivalent work schedule?
>
> A. That's correct, Your Honor.

AR 71-72. The VE's testimony makes clear that whether the RFC includes a provision for unscheduled breaks from work activity due to Plaintiff's seizure disorder is outcome determinative.

In the administrative decision, the ALJ made the following finding in support of *not* including such a provision in the RFC:

> The record does not support a finding that the claimant requires more than the usual number of breaks or that he would be frequently absent from the workplace secondary to an impairment. There is a suggestion in the medical evidence of record that the claimant's condition could be treated more aggressively, but they declined. There are no records indicating emergency room visits, or significant injury or sequelae following seizures.

AR 14.

An ALJ must discuss evidence favorable to the disability determination as well as evidence unfavorable to that determination. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996) (holding that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significant probative evidence he rejects"). Nor is an ALJ "entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Here, the ALJ failed to give proper context to the "suggestion" in the medical evidence that Plaintiff's condition could be treated more "aggressively."

The medical record shows that in October 2005, Plaintiff was seen by Heather Tipsword, DO. The purpose of Plaintiff's visit was to refill his seizure medication, Tegretol. *See* AR 189 ("pt. here for recheck on meds – refill on tegratol"). Dr. Tipsword reported that Plaintiff "[h]ad a significant decrease in seizure activity since increasing his tegratol dose, from 5-6 per week to 2-4 per month." The treatment notes further provide:

> Asked mom to have lab drawn in February. Discussed that this is still sub-optimal treatment of his disorder, and recommended more agressive [sic] treatment. They have declined at this time, and have chosen to continue on the current treatment.

AR 189.[2]

Although the ALJ summarized the medical evidence and referenced Dr. Lawton's consultative examination, in specifically finding that Plaintiff requires "no more than the usual number of breaks," the ALJ failed to discuss probative evidence contained in Dr. Lawton's opinion. In his treatment notes from March 2007, Dr. Lawton, a board certified neurologist, explained that Plaintiff was placed on Tegretol at age ten and that the Tegretol "has never controlled the problem." AR 239. Dr. Lawton further opines:

> The patient gives a history that is fairly classic for a temporal lobe seizure disorder. His treatment has been far from ideal and there is an outside chance an EEG would demonstrate a spike and wave pattern which would actually be made worse by Tegretol rather than better. It is important that a repeat EEG be done. The patients seizure frequency is that as described above and I have no reason to doubt it. I would be pleased to review any other medical data that might be available, the most useful of which would be a current EEG if that is performed.

---

[2]The medical records fail to disclose what Dr. Tipsword intended by "more aggressive treatment."

9

AR 240.[3] In contrast to this opinion, Dr. Warner, an examining neurologist, recommended in May 2007 that Plaintiff increase the dosage of Tegretol. AR 260. But subsequent treatment records from Crossing Community Clinic in May 2008 indicate Plaintiff's mother reported his seizures increased when the dosage of Tegretol was increased. AR 257.

The ALJ's implicit determination that Plaintiff was not following prescribed treatment is not supported by substantial evidence because he failed to discuss this additional probative evidence and failed to provide full context to Plaintiff's course of treatment.[4] A remand, therefore, is required. On remand, the ALJ must discuss the uncontroverted evidence as well as significant probative evidence he rejects. Moreover, after proper consideration of all the evidence, if necessary, the ALJ will have the opportunity to further develop the record by obtaining the EEG deemed "imperative" by Dr. Lawton. AR 240. To this end, it appears from Dr. Lawton's opinion that the EEG would clarify the source or cause of the seizures and, in turn, whether the Tegretol is being properly prescribed, what dosage of the medication would best address Plaintiff's seizure activity and any resulting functional limitations.

The ALJ also did not include a provision in the RFC for more than the usual number of breaks based on Plaintiff's seizure disorder because the ALJ found there were "no records

---

[3]The seizure frequency as described was from 2-3 up to 13 episodes per month. AR 239.

[4]In addition, the record indicates Plaintiff could not afford regular treatment. He received treatment from a free clinic, Crossings Community Clinic, and his mother testified at the administrative hearing that she did not have the money to afford health insurance. *See* AR 58. The ALJ failed to discuss this evidence.

indicating emergency room visits, or significant injury or sequelae following injury." AR 14. The ALJ's logic is faulty on this point. Plaintiff's frequent seizures arising from his seizure disorder could certainly diminish his ability to perform regular work activity with or without consequent injury or emergency room treatment. Moreover, the ALJ again ignored probative evidence in making this determination by ignoring evidence in the record that Plaintiff often falls during a seizure episode and may or may not suffer some degree of injury. AR 41, 52-53, 152, 153, 155, 156, 157, 159. In addition, the record shows Plaintiff is often tired or needs to sleep after a seizure. *See id*. For this reason, too, the ALJ's determination that no provision for unscheduled breaks from work activity due to Plaintiff's seizure disorder be included in the RFC is not supported by substantial evidence. On remand, the ALJ should address the evidence regarding limitations associated with Plaintiff's seizures including evidence that Plaintiff sometimes falls while having a seizure and that he is often tired or needs to sleep after a seizure.

## VI. Conclusion

The decision of the Commissioner is reversed and the cause is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED this __31st__ day of May, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE